## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON DIVISION

KEITH W.R. LOWE,

     Plaintiff,

v.                                 Case No. 2:19-cv-00504

EX-WARDEN DAVID BALLARD and
CAPTAIN BRIAN PENICK,

     Defendants.

## PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable Joseph R. Goodwin, United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

## RELEVANT PROCEDURAL HISTORY

This matter is proceeding against Defendants David Ballard ("Ballard"), a former Warden at the Mount Olive Correctional Complex ("MOCC"), and Captain Brian Penick ("Penick), a former correctional officer at MOCC, on Plaintiff's Second Amended Complaint (ECF No. 20).  The Second Amended Complaint alleges that, on July 7, 2017, Penick arrived at Plaintiff's cell, along with other officers (who are not named as defendants herein) and told Plaintiff he was being taken to speak with investigators.[1] (*Id.* at 2).  After being removed from his cell in full restraints and while being escorted

---

[1]  At that time, Plaintiff was suspected of possessing a cell phone and several cell searches had been conducted looking for the phone, but it had not then been located.  As noted by Ballard's motion, during the prior searches, a folding knife and bit driver were discovered in Plaintiff's cell and the cell phone was subsequently found on July 21, 2017.

through the dayroom, Plaintiff repeatedly advised Penick that he had a right not to speak to investigators and did not wish to talk to them. (*Id.*) Plaintiff's Second Amended Complaint further alleges that, without warning, Penick "picked up" Plaintiff and "slammed him down on the concrete floor directly on his tailbone and lower back." (*Id.*) Plaintiff further claims that Penick "physically and forcefully restrained and assaulted and battered him" and that he was forcefully carried out of the pod to the security wing. (*Id.* at 2-3). Plaintiff claims that he suffered serious physical injury because of this "unnecessary and unjustified excessive use of force" in violation of his Eighth and Fourteenth Amendment rights. (*Id.* at 3).

The Second Amended Complaint further alleges a claim of supervisory liability against Ballard. (*Id.* at 4). However, it fails to allege that Ballard was personally involved in or even aware of this specific use of force prior to his role in denying a grievance Plaintiff subsequently filed. Rather, Plaintiff merely makes conclusory allegations that Ballard "knew of the pervasive and widespread conduct of Penick and other COs at MOCC." (*Id.* at 4). He further claims that, before and after July 7, 2017, Penick and others "had used force against Plaintiff and other inmates, not for the purpose of restraint or discipline, but for the malicious purpose to punish, which caused injury to Plaintiff." (*Id.*) Plaintiff further alleges that Ballard implemented and condoned a practice known as "Martial Law," by which "efforts to temper" were not used prior to exerting force against inmates and that he allowed correctional staff to use unnecessary and excessive force with deliberate indifference to the health and safety of inmates in violation of the Eighth Amendment. Plaintiff seeks monetary damages along with declaratory and injunctive relief, including transfer to another facility. (*Id.* at 5).

2

Plaintiff is proceeding *in forma pauperis*. Thus, officers of the court were charged with the duty of issuing and serving process. 28 U.S.C. § 1915(d). Service of process proved difficult in this matter because Ballard and Penick are no longer employed at MOCC or by the West Virginia Division of Corrections and Rehabilitation ("WVDCR") and their home addresses were not initially known or provided by Plaintiff. As relevant here, Ballard was ultimately served with his summons and has filed a Motion to Dismiss (ECF No. 57), which is fully briefed and will be addressed herein. Penick, however, has not been successfully served with process.

Two attempts at serving Penick were unsuccessful when the United States Marshals Service ("USMS") improperly left his summonses with employees of the WVDCR or its "legal department," which was not proper service under Rule 4 of the Federal Rules of Civil Procedure. (ECF No. 15 and 23). A third attempt by the USMS at personally serving Penick at MOCC was also unsuccessful and it was then ascertained that Penick no longer worked at MOCC. (ECF No. 38). Thus, on May 17, 2023, the undersigned ordered Plaintiff to provide an alternative address where service of process could be attempted on Penick. (ECF No. 59). Plaintiff provided an address for Penick on June 2, 2023. (ECF No. 65).

On June 5, 2023, the undersigned ordered that a new summons for Penick be issued and served by certified mail, return receipt requested, with restricted delivery, at the address that had been provided to the court by Plaintiff. (ECF Nos. 66, 67). On June 13, 2023, Plaintiff filed an Objection and Motion (ECF No. 73) requesting that, should the summons not be successfully served by certified mail, the court direct that service be personally attempted on Penick by the United States Marshals Service ("USMS") at that same address.

3

On June 29, 2023, Penick's summons package was returned unexecuted with the notations "UNCLAIMED" and "RETURN TO SENDER. IN DISPUTE. UNABLE TO FORWARD." (ECF No. 74). Consequently, on July 12, 2023, the undersigned sustained Plaintiff's objection and ordered the USMS to attempt personal service on Penick at that same address. (ECF No. 75). The undersigned's order and notice indicated that the period for service of the summons under Rule 4(m) of the Federal Rules of Civil Procedure would run from July 12, 2023, and if service was not perfected within that time, no further service attempts would be made, and the undersigned would recommend dismissal of Defendant Penick pursuant to Rule 4(m). On July 20, 2023, the USMS returned the most recent summons as unexecuted, indicating that, on July 19, 2023, personal service thereof was attempted at a residence in Leesburg, Virginia, and that Penick did not reside at that address and had not for at least five years. This matter is ripe for adjudication.

## ANALYSIS

### I.    Dismissal of claim against Penick under Rule 4(m).

Although the Court is charged with assisting the *pro se* pauper Plaintiff with service of process under 28 U.S.C. § 1915(d), it is not required to be an advocate for him. Thus, the court has no responsibility to continue to search for the location of Defendant Penick. As noted by another Honorable Judge of this court:

> At a minimum, such plaintiffs bear the reasonable burden of identifying some address where service can be properly made. Only upon provision of such information – which is absent here – can the courts execute service.

*Skaggs v. Clark*, No. 3:13-cv-03293, 2015 WL 269154, *3 (S.D. W. Va., Jan. 21, 2015) (Chambers, J.); *see also Lacy v. DeLong*, No. 2:13-cv-14813, 2017 WL 6508364 *2 (S.D. W. Va. Dec. 20, 2017) ("The Court is not required to continue its efforts at the behest of

Plaintiff who is unable to provide the Court with any information allowing for service to be had upon [the defendant]").

Rule 4(m) of the Federal Rules of Civil Procedure states as follows:

> Time Limit for Service.  If a defendant is not served within 90 days after the complaint is filed [or as otherwise ordered by the court], the court - on motion or on its own initiative after notice to the plaintiff - must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).  Because more than 90 days have passed without appropriate service on Defendant Penick, notwithstanding multiple attempts at serving him, including at an address provided by Plaintiff as ordered, the undersigned proposes that the presiding District Judge **FIND** that Defendant Penick has not been properly served with process and Plaintiff has not provided good cause for such failure.  Thus, the claim against Penick should be dismissed under Rule 4(m).

## II.  Ballard's Motion to Dismiss.

On May 16, 2023, Defendant Ballard, by counsel, filed a Motion to Dismiss (ECF No. 57) and a Memorandum of Law in support thereof (ECF No. 58).  The motion asserts five grounds for dismissal of Plaintiff's Second Amended Complaint against Ballard.  Specifically, Ballard claims that this civil action was untimely filed; that Plaintiff failed to properly exhaust his administrative remedies; that the Second Amended Complaint fails to state a proper claim against him in either his individual or official capacity; and that he is entitled to qualified immunity on Plaintiff's supervisory liability claim.

On June 8, 2023, Plaintiff filed an Objection and Response in Opposition to Ballard's Motion to Dismiss.  (ECF No. 69).  On June 13, 2023, Ballard filed a reply.

(ECF No. 72).  The parties' arguments in these documents will be discussed as necessary *infra*.

### A.    Standard of Review

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).  However, to withstand a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead enough facts "to state a claim to relief that is plausible on its face."  *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'"  *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555).  A complaint that alleges enough facts "to satisfy the elements of a cause of action created by [the relevant] statute" will survive a motion to dismiss.  *Id.* at 648 (quoting *McCleary-Evans*, 780 F.3d at 585).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679.  This Court then "assume[s] the[] veracity" of the

complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.*  Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id.* "[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted).  This Court construes a *pro se* plaintiff's allegations "liberally," but the complaint must nonetheless "contain enough facts to state a claim for relief that is plausible on its face." *Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016).

B.    *Statute of limitations.*

Plaintiff has alleged violations of his federal constitutional rights, which are actionable in federal court under 42 U.S.C. § 1983.  Because § 1983 does not contain its own statute of limitations, a claim brought thereunder borrows the statute of limitations that the forum state uses for general personal injury cases. *Owens v. Okure*, 488 U.S. 235, 249-50 (1989).  In West Virginia, that statute of limitations is two years. *See* W. Va. Code § 55-2-12; *see also Courtney v. Courtney*, 437 S.E.2d 436, 440 (W. Va. 1993).

However, federal law controls when a cause of action accrues.  *See Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975).  The statute of limitations begins to run when the "plaintiff possesses sufficient facts about the harms done to him that reasonable inquiry will reveal his cause of action." *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995); *see also Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 404-05 (4th Cir. 2014) ("Generally speaking, a federal claim 'accrues when the

plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred,' and therefore [the court] 'typically determine[s] the accrual of a § 1983 action by looking to the event that should have alerted the typical lay person to protect his or her rights.'") (Citation omitted).    Here, as asserted by Defendant Ballard, Plaintiff's cause of action arose on July 7, 2017, the date that the allegedly excessive force was used against him.

Because Plaintiff's initial complaint was received and docketed in the Clerk's Office on July 9, 2019, Ballard asserts that it was filed two days after the expiration of the two-year statute of limitations and is, thus, untimely.  (ECF No. 58 at 3-4).  Plaintiff, however, contends that his complaint was subject to the "prison mailbox rule," which deems a document filed as of the date that a prisoner delivers it to prison officials to be mailed to the court.  *See Houston v. Lack*, 487 U.S. 266 (1988); *see also United States v. McNeill*, 523 F. App'x 979, 981 (4th Cir. 2013) ("pro se litigant's legal papers are considered filed upon 'delivery to prison authorities, not receipt by the clerk.'").  (ECF No. 69 at 6).  Plaintiff contends that he placed his initial complaint in the prison mailbox on July 5, 2019 (the same date that he executed the document), although the postal stamp on the envelope indicates that it was not processed by the United States Postal Service until July 8, 2019.  (ECF No. 1 at 16; ECF No. 1, Attach. 3).[2]  Without citing any support therefore, Ballard's reply brief contends that the prison mailbox rule, which was initially determined to apply to the filing of a federal habeas corpus appeal, does not apply to the initial filing of a civil complaint and, thus, should not be applied herein. (ECF No. 72 at 2).

---

[2] The undersigned further notes that Plaintiff's cover letter that accompanied the complaint is dated July 6, 2017.  (ECF No. 1, Attach. 2).  Thus, it appears that Plaintiff could not have delivered his filing for mailing prior to that date.

In *Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 736 (4th Cir. 1991), however, the United States Court of Appeals for the Fourth Circuit applied the prison mailbox rule to the filing of an initial civil complaint. Likewise, most of the other federal circuits and numerous district courts have also extended the prison mailbox rule to civil rights complaints under § 1983. *See, e.g., Price v. Philpot*, 420 F.3d 1158, 1164 (10th Cir. 2005) ("the prison mailbox rule articulated in *Houston* applies equally to an inmate's filing of a civil rights complaint."); *Sulik v. Taney County*, 316 F.3d 813, 814-15 (8th Cir. 2003) (collecting cases), *overruled on other grounds by Sulik v. Taney County*, 393 F.3d 765 (8th Cir. 2005); *Casanova v. Dubois*, 304 F.3d 75, 79 & n. 5 (1st Cir. 2002) ("Most circuits have extended mailbox rule to prisoner § 1983 filings.") *Richard v. Ray*, 290 F.3d 810, 813 (6th Cir. 2002) (per curiam) (applying *Houston*, as a "rule of equal treatment," to prisoner civil complaints); *Cooper v. Brookshire*, 70 F.3d 377, 380 (5th Cir. 1995) (prison mailbox rule equally applies to all civil complaints); *Garvey v. Vaughn*, 993 F.2d 776, 783 (11th Cir. 1993) (applying prison mailbox rule to § 1983 and FTCA complaints); *Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993) (applying prison mailbox rule to § 1983 complaints); *but see Cretacci v. Call*, 988 F.3d 860 (6th Cir.), *reh'g denied* (Mar. 17, 2021), *cert. denied*, 142 S. Ct. 400, 211 L. Ed. 2d 214 (2021) (prison mailbox rule did not apply to prisoners filing civil complaints in federal court who were represented by counsel). Thus, it is well-settled that the prison mailbox rule applied to habeas actions and appeals applies equally to *pro se* prisoner civil complaints.

Accordingly, the undersigned believes that the prison mailbox rule is applicable to the filing of Plaintiff's complaint. In this case, however, there appears to be a question of fact as to the date that would apply under the mailbox rule. Plaintiff executed the initial complaint on July 5, 2019, and he suggests that he deposited it for

mailing that same date, which would render it timely filed under the mailbox rule. However, the postal stamp on the envelope indicates that the document was not mailed until July 8, 2019. If that date were used, it would render the document untimely filed. Because this is a question of fact that may not be resolved on a motion to dismiss, the undersigned proposes that the presiding District Judge **FIND** that this matter is not presently ripe for dismissal based upon a statute of limitations defense and that Ballard's Motion to Dismiss on that basis should be denied.

       *C.*     *Failure to Exhaust Administrative Remedies.*

      The Prison Litigation Reform Act ("PLRA") was enacted "to address concerns about the 'ever-growing number of prison-condition lawsuits that were threatening to overwhelm the capacity of the federal judiciary.'" *Green v. Young*, 454 F.3d 405, 406 (4th Cir. 2006) (quoting *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 676 (4th Cir. 2005)). "The PLRA imposes some rather substantial limitations on a prisoner's ability to initiate a civil action." *Id.* One such limitation is the requirement contained in 42 U.S.C. § 1997e(a) to exhaust administrative remedies within the prison before filing a civil action. *Id.*

      The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any . . . correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Such exhaustion is mandatory regardless of the type of relief sought or offered through the administrative

procedures and so long as the grievance tribunal has authority to take some responsive action. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

"Not only must a prisoner exhaust his administrative remedies, but he must also do so properly." *Wells v. Parkersburg Work Release Ctr. et al.*, No. 2:15-cv-04103, 2016 WL 696680, at *3 (S.D. W. Va. Jan. 19, 2016). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* (citing *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006)).

Like the PLRA, the West Virginia Prison Litigation Reform Act ("WVPLRA") "require[s] inmates to exhaust their administrative remedies before they bring a lawsuit." *Legg v. Adkins*, No. 2:16-cv-01371, 2017 WL 722604, at *2 (S.D. W. Va. 2017) (citing 42 U.S.C. § 1997e(a); W. Va. Code § 25-1A-2a(i)). Under the WVPLRA, "[a]n inmate may not bring a civil action regarding an ordinary administrative remedy until the procedures promulgated by the agency have been exhausted." W. Va. Code § 25-1A-2(c). The WVPLRA defines an ordinary administrative remedy as "a formal administrative process by which an inmate submits a grievance seeking redress or presenting concerns regarding any general or particular aspect of prison life . . . . An ordinary administrative remedy includes, but is not limited to, . . . staff treatment or some other alleged wrong." *Id.* § 25-1A-2(a). Under the WVPLRA,

> An ordinary administrative remedy is considered exhausted when the inmate's grievance complies with duly promulgated rules and regulations regarding inmate grievance procedures, has been accepted, fully appealed and has received a final decision from the Commissioner of Corrections or the Commissioner's designee, or the Executive Director of the Regional Jail Authority, or the Director's designee.

W. Va. Code § 25-1A-2(d).

In accordance with W. Va. Code § 25-1A-2. the West Virginia Division of Corrections and Rehabilitation ("WVDCR") instituted uniform procedures for filing an inmate grievance, which are found in Policy Directive 335.00.  If an inmate fails to fully comply with the provisions of those rules, the inmate "shall not be considered to have taken full advantage of administrative remedies afforded him/her and therefore has not exhausted administrative remedies." *Miller v. Rubenstein*, No. 2:16-cv-05637, 2018 WL 736044, at *5 (S.D. W. Va. Feb. 6, 2018) (citing Policy Directive 335.00 § (V)(D)(4)).

The parties appear to agree that Plaintiff filed and fully exhausted one relevant grievance with respect to the July 7, 2017 incident:  Grievance No. 17-MOC-Q2-396, which Plaintiff attached to his First Amended Complaint.  (ECF No. 12 at 35).  That grievance complained as follows:

> I'm grieving the fact that force was used on me because I refused to talk to the investigator & I was told that I had to talk to the Investigators when I respectfully refused.  I was restrained and H Cert team members picked me up off my feet and carried me out of the pod and down the hallway to the security wing.  I have a right not to talk to investigators.

(*Id.*)  Ballard contends that this grievance, although it was fully exhausted, did not sufficiently address the conduct about which he now complains in his Second Amended Complaint.

Specifically, Ballard asserts that the grievance "does not make any reference to allegedly being slammed to the ground or otherwise subject to any physical force other than being carried to the security wing while he was 'respectfully refusing' to go." (ECF No. 58 at 2).  He further contends that Plaintiff "made no reference to being assaulted, battered, slammed to the floor, or otherwise subjected to any excessive force" in the grievance and, instead, first alleged those details when he filed his complaint in this court.  (*Id.*)  Ballard's memorandum of law further argues:

A plain reading of Grievance 17-MOC-Q2-396 would lead one to believe that Inmate Lowe believes he had a Constitutional right to refuse to be escorted from his cell in QII to the Security Wing under the guise of being interviewed by an Investigator.  Grievance 17-MOC-Q2-396 is silent as to the alleged slamming Inmate Lowe to the ground and assaulting him.  However, the heart of Plaintiff's instant claim is not that he was taken to an area of the prison he wished not to visit, but that he was thrown to the ground and assaulted along the way.  While Inmate Lowe may have exhausted the grievance process with regard to Grievance 17-MOC-Q2-396, such grievance did not address the issues present in the instant suit.

(*Id.* at 9).

Plaintiff's response asserts that the grievance does challenge the use of force against him.  (ECF No. 69 at 7).  His response contends:

As I stated in my grievance, your honor, "force[] was used on me," and this included being restrained, slammed on the floor, and forcibly carried down the hallway.  And I stated I wanted to be free from "forcibly being carried and restrained . . ."  Restrained was one use of unnecessary force and being forcibly carried was another use of force however, the use of force was a continuing one, in that it happening [sic] all during the same use of force which started from me being restrained . . . slammed to the ground and then carried down the hallway.

(*Id.*)  Ballard's reply did not address this issue.

"The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  *Jones v. Bock*, 549 U.S. 199, 218 (2007).  Other than a requirement that only one issue be raised per grievance, the WVDCR grievance process does not specify the level of detail required to properly exhaust a grievance.  Here, Plaintiff grieved the fact that force was used against him in the course of being taken to speak to investigators against his will.  The undersigned proposes that the presiding District Judge **FIND** that this sufficiently exhausted Plaintiff's use of force claim and that to argue otherwise is simply splitting hairs.  Accordingly, Ballard's Motion to Dismiss on this basis should be denied.

D.    *Official capacity claim.*

As further asserted by Ballard's motion, Plaintiff's Second Amended Complaint fails to state a plausible claim against him in his official capacity.  Plaintiff's response contends that "Ballard does not meet the definition of government agency" but otherwise fails to specifically dispute this argument.  (ECF No. 69 at 7-8).  Plaintiff claims allege that Ballard's conduct violated his rights under the Eighth Amendment. As noted above, the vehicle for such a claim is section 1983 of Title 42 of the United States Code, which provides in pertinent part:

> Every person, who under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress . . . .

42 U.S.C. § 1983.

While not in itself a source of substantive rights, section 1983 provides a "method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).  To successfully establish a section 1983 claim, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a <u>person</u> acting under color of state law." *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)) [Emphasis added]; *see also Monell v. Dept. of Social Servs.*, 436 U.S. 658, 691 (1978).

As noted by Ballard, the Supreme Court of the United States has held that "neither a State nor its officials acting in their official capacities are 'persons' under

§1983." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 60, 71 (1989) (Claims under 42 U.S.C. § 1983 are specifically directed at "persons").  Thus, the claim against Ballard in his official capacity fails as a matter of law.

Furthermore, pursuant to the Eleventh Amendment to the United States Constitution, the power of the federal judiciary does not extend to suits by a citizen of one state against another, or to suits by a citizen against his or her own state.  *Hans v. Louisiana*, 134 U.S. 1, 9 (1980).  Thus, the Eleventh Amendment of the United States Constitution bars a suit in a federal court by private parties seeking to impose monetary liability upon a State or State officials, which may be paid from public funds in the state treasury.  *Quern v. Jordan*, 440 U.S. 332, 337 (1979).  Absent consent or waiver by statute, federal suits against a state by a citizen of that state or another state are prohibited by the Eleventh Amendment.  *Kentucky v. Graham*, 473 U.S. 159, 199 (1985); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984).  These narrow exceptions to Eleventh Amendment immunity do not exist in this case. *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 248-49 (4th Cir. 2012).

As addressed *infra*, Plaintiff's complaint documents fail to state any plausible federal constitutional claim.  Consequently, even to the extent that the Eleventh Amendment provides an exception for official capacity claims for injunctive relief, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff has not established a right to such relief herein.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Ballard, in his official capacity, is not a person who can be sued under § 1983 and is further immune from suit under the Eleventh Amendment.  Accordingly, Ballard's motion to dismiss on this basis should be granted.

E.    *Individual capacity claim.*

Ballard further asserts that Plaintiff's allegations against him are "entirely conclusory in form," and "without one single supporting fact that can lead this Court to conclude Plaintiff's claims for Supervisor liability are plausible, as opposed to merely 'possible.'" (ECF No. 58 at 4).  His memorandum of law further argues:

> Plaintiff does not make any allegations in the entirety of his Complaint that David Ballard was personally involved in the incidents giving rise to the Complaint.  As such, the claims against Defendant Ballard would be that of deliberate indifference and reckless endangerment.  Yet, Plaintiff offers no facts to support this claim other than the threadbare recitals that Defendant Ballard had specific knowledge of these incidents and the mere allegation that a grievance was filed following the July 7, 2017, incident. Plaintiff at no point offers any other facts as to what specific knowledge these Defendants had in regard to the incidents.  *Iqbal* requires that Plaintiff demonstrate to some degree the supporting factual basis upon which the claim for Supervisor liability is based. The allegations in the Complaint do not meet this standard and, therefore, it is proper for this Court to dismiss David Ballard from the above-captioned matter.

(*Id.* at 5).

Plaintiff's response reiterates his assertions made in his Second Amended Complaint that Ballard implemented and authorized a "long-standing" practice, colloquially known as "Martial Law," by which staff was not required to make "efforts to temper" before using force against segregated inmates, and Plaintiff attempts to provide evidence, via his own sworn declaration, supporting the allegation that Ballard condoned this policy or practice.  (ECF No. 20 at 4; ECF No. 69 at 3-4).[3]   He further asserts that he can develop and produce additional evidence to support this claim through discovery (essentially claiming that Ballard's motion is premature).  (ECF No. 69 at 1-4).

---

[3]  As the court is reviewing this matter on a motion to dismiss, the undersigned declines to consider evidence outside the allegations within the four corners of the Second Amended Complaint, which would necessitate converting the motion to one for summary judgment pursuant to Fed. R. Civ. P. 56.

Plaintiff claims that "Ballard has already been aware and had knowledge by a host, slew of lawsuits filed against him in state and this court alleging supervisory liability for the exact same reason that I am filing a claim against him for . . . ." (*Id.* at 4) (other citations omitted). He further asserts that Ballard is aware of a pattern and practice by Penick of using excessive or questionable force, and again asserts that evidence thereof can be produced in discovery. (*Id.* at 4-5). He emphasizes that, as the Warden of MOCC, Ballard was responsible for the day-to-day operations, was Penick's "direct supervisor" and was "calling the shots" and "giving Penick orders." (*Id.* at 5). Thus, Plaintiff contends that "Ballard knew or certainly should have known of [the] existence [of this practice and policy] and the injuries and consequences from it" and took no steps to "curb or stop" it. (*Id.* at 5-6). Plaintiff contends that this is sufficient to demonstrate deliberate indifference or tacit authorization of the practice and its consequences. (*Id.* at 6). Ballard's reply does not re-address this issue.

The Fourth Circuit has firmly held that "supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984). However, the burden of proof on a supervisory liability claim is weighty. *Iqbal*, 556 U.S. at 677; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). A supervisor may not be held vicariously liable for the actions of his employees. *See Berry v. Rubenstien*, No. 1:07-00535, 2008 WL 1899907, at *2 (S.D. W. Va. Apr. 25, 2008) ("There is, however, no *respondeat superior* liability pursuant to 42 U.S.C. § 1983.") (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). Instead, "'[l]iability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights,' or where a subordinate acts pursuant to a policy or custom for which the supervisor is responsible."

17

*Id.* (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)); *see also Lowe v. Ballard*, No. 2:17-cv-03929, 2020 WL 5412997, at *2 (S.D. W. Va. Sept. 9, 2020).

In *Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994), the Fourth Circuit held that supervisors may be liable for the actions of their subordinates where the supervisor, <u>by his own conduct</u>, was deliberately indifferent to, or tacitly authorized or approved prior constitutional violations.  Such liability is not based on *respondeat superior*, but rather upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care."  13 F.3d at 798 (*quoting Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984)).  In *Shaw*, the Court discussed the following elements necessary to establish a supervisor's liability under 42 U.S.C. § 1983:

1)   The supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;

2)   The supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices," and

3)   There was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injuries suffered by the plaintiff.

13 F.3d at 799.  However, in *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court clarified that a prison official's "actual subjective awareness" of an excessive risk of harm or safety was required to hold the official liable under the Eighth Amendment.  Thus, a prison official cannot be held liable for the failure to alleviate a risk that he should have perceived, but did not in fact perceive.  *Id.* at 838.  As further noted in *Evans v. Chalmers*:

> [T]he Supreme Court explained in *Iqbal* that "a supervisor's mere knowledge" that his subordinates are engaged in unconstitutional conduct is insufficient to give rise to liability; instead a supervisor can only be held liable for "his or her own misconduct." [556 U.S. at 677.]

703 F.3d 636, 660-61 (4th Cir. 2013). Thus, to hold a supervisory defendant like Ballard liable, Plaintiff must allege facts that allow the court to draw a reasonable inference that the supervisor's own conduct permitted the constitutional violation to occur. *Iqbal*, 556 U.S. at 677.

To establish the first *Shaw* element, Plaintiff must show "(1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." 13 F.3d at 799. "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that [specific conduct engaged in by the subordinate] is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Id.* Turning to the second element, Plaintiff "may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" *Id.* (citations omitted). The *Shaw* Court held:

> The plaintiff assumes a heavy burden of proof in establishing deliberate indifference because: [o]rdinarily, [the plaintiff] cannot satisfy his burden of proof by pointing to a single incident or isolated incidents, for a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibilities. Nor can he reasonably be expected to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct. A supervisor's continued inaction in the face of documented widespread abuses, however, provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates.

*Id.* (citations omitted).

The third element for supervisory liability is established "when the plaintiff demonstrates an 'affirmative causal link' between the supervisor's inaction and the harm suffered by the plaintiff." *Id.* (citations omitted). As noted by the presiding District Judge herein, "causation in this context encompasses both cause in fact and proximate cause." *Lowe v. Ballard*, No. 2:17-cv-03929, 2020 WL 5412997, at *2-3 (S.D. W. Va. Sept. 9, 2020) (citing *Shaw*, 13 F.3d at 799). "[P]roof of causation may be direct . . . where the policy commands the injury of which the plaintiff complains . . . [or] may be supplied by [the] tort principle that holds a person liable for the natural consequences of his actions." *Id.* (citations omitted).

As an initial matter, as noted above, the Second Amended Complaint does not sufficiently allege facts to demonstrate that Ballard had actual knowledge of the conduct alleged against Penick. At best, Plaintiff alleges that Ballard was specifically made aware of this incident after the fact through the grievance process, which in and of itself is not sufficient to hold him liable herein. *See, e.g., Rygh v. Clifford,* No. 2:12-cv-07387, 2014 WL 1338544, at *18 (S.D. W. Va. Feb. 21, 2014), *report and recommendation adopted*, 2014 WL 1338547 (S.D. W. Va. Mar. 31, 2014); *Lowe v. Matheney*, No. 2:13-cv-22416, 2015 WL 5795867, at *9 (S.D. W. Va. Sept. 30, 2015) (supervisory liability claims alleging little more than supervisor's role in the denial of grievances are insufficient to state any plausible claims for relief); *see also Larson v. Meek*, 240 F. App'x 777, 780 (10th Cir 2007) (inadequacy of allegations involving supervisory liability based on denial of grievances); *Ferris v. Jones*, No. 4:14-cv-454, 2015 WL 4668297, at *9 (N.D. Fla. Aug. 5, 2015) (granting a motion to dismiss for failure to state a claim of supervisory liability claims predicated on the denial of grievances).

Moreover, Plaintiff's allegations concerning the "pervasive" practice known as "Martial Law" are too conclusory and attenuated to plausibly state a claim of supervisory liability against Ballard under the circumstances. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's Second Amended Complaint fails to state a plausible Eighth Amendment claim against Ballard in his personal capacity and that Ballard's motion to dismiss should be granted on this basis.

F.    *Qualified immunity*

Ballard's Motion to Dismiss further asserts that he is entitled to qualified immunity on Plaintiff's claim against him. Qualified immunity "shields government officials from liability for civil damages provided their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." *Haze v. Harrison*, 961 F.3d 654, 660 (4th Cir. 2020); *Meyers v. Baltimore Cty.,* 713 F.3d 723, 731 (4th Cir. 2013). The following test is used to determine whether a defendant is entitled to qualified immunity: (1) taken in the light most favorable to the party asserting the injury, do the facts alleged show the defendant's conduct violated a constitutional right; and (2) was that right clearly established such that a reasonable person would have known that their conduct was unlawful. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 538-39 (4th Cir. 2017). A defendant is "entitled to a qualified immunity defense so long as 'the law did not put the [defendant] on notice that his conduct would be clearly unlawful.'" *See Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Henry v. Purnell,* 652 F.3d 524, 531 (4th Cir. 2011) (en banc). Here, as the Second Amended Complaint fails to establish a plausible Eighth Amendment violation by Ballard, he is entitled to qualified immunity and Ballard's motion to dismiss on this basis should be granted.

21

## RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DISMISS** the claim against Defendant Brian Penick pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.  It is further respectfully **RECOMMENDED** that Defendant David Ballard's Motion to Dismiss (ECF No. 57) be **DENIED** with respect to the statute of limitations and administrative remedy exhaustion defenses but **GRANTED** to the extent that the Second Amended Complaint fails to state a plausible claim for relief against Ballard in both his individual and official capacities.   Accordingly, it is further respectfully **RECOMMENDED** that this civil action be dismissed and removed from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R, Goodwin, United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v.*

*Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to Judge Goodwin and any opposing parties.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to Plaintiff and to counsel of record.

November 28, 2023

Dwane L. Tinsley
United States Magistrate Judge